## Edward W. Wood, Plaintiff in Error, v. August A. Meyer et al., Defendants in Error.

### Gen. No. 29,921.

1. CORPORATIONS—*evidence admissible in action to recover purchase price of securities issued in violation of Blue Sky Law.* In an action to recover purchase price of securities as issued in violation of Illinois Securities Law, participation certificates or receipts issued to plaintiff were improperly excluded in evidence, having been tendered in conjunction with trust agreement upon which they were based.

2. CORPORATIONS—*certificates issued under trust agreement providing for formation of limited partnership as Class "D" securities under Blue Sky Law.* Participation certificates or receipts issued pursuant to a trust agreement providing that funds received in exchange therefor shall be paid over to the trustees, who are authorized to use the same to acquire and operate oil leases, and to "organize a limited partnership with themselves as general partners and all beneficiaries as limited partners," fall within the definition of Class "D" securities in Cahill's St. ch. 32, ¶ 256, subd. 4.

3. EVIDENCE—*judicial notice as to existence of Illinois corporation.* The Appellate Court cannot take judicial notice of the existence of an Illinois corporation.

4. CORPORATIONS—*certificates issued under trust agreement for formation of limited partnership as Class "A" securities under Blue Sky Law where corporation subsequently formed.* Participation certificates or receipts issued pursuant to a trust agreement under which the trustees are authorized to "organize a limited partnership with themselves as general partners and all beneficiaries as limited partners," are not Class "A" securities within the meaning of Cahill's St. ch. 32, ¶ 257, subd. 11, although the trustees in fact incorporated under the laws of the State.

5. CORPORATIONS—*right of holder of Class "D" securities issued without compliance with Blue Sky Law to recover consideration notwithstanding partnership relation with issuers thereof.* The holder of participation certificates or receipts issued pursuant to a trust agreement under which the trustees were authorized to organize a limited partnership with themselves as general partners and the beneficiaries as limited partners was not precluded from maintaining an action to recover the consideration paid therefor because issued without complying with the requirements of the Illinois Securities Act, notwithstanding the partnership relation, in view of Cahill's St. ch. 32, ¶ 255, defining "issuer" of securities so as to include partnerships.

6. CORPORATIONS—*classification under Blue Sky Law of securities issued prior to formation of corporation where commissions paid for procuring subscription.* Cahill's St. ch. 32, ¶ 257, subd. 11, is inapplicable to participation certificates issued pursuant to a trust agreement authorizing the trustees to form a limited partnership with themselves general partners and the beneficiaries as limited partners, even if the trustees did in fact form a corporation, where the evidence shows that commissions were paid for procuring contributions in exchange for such certificates.

7. CORPORATIONS—*sufficiency of evidence to support recovery for issuance of securities without compliance with Blue Sky Law.* Evidence in an action to recover the consideration paid for securities issued without compliance with the requirements of the Illinois Securities Law held sufficient to make out a prima facie case for plaintiff.

Error by plaintiff to the Superior Court of Cook county; the Hon. EMANUEL ELLER, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Reversed and remanded. Opinion filed March 10, 1926.

· LEESMAN & ROEMER for plaintiff in error.

NETHERTON & NETHERTON, for August A. Meyer, defendant in error.

ALBERT R. GATES and WILLIAM J. LACEY, for certain defendants in error.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action of assumpsit against the defendants to recover the amount he had paid to them for certain securities, which he claimed were designated Class "D" securities under the provisions of the Illinois Securities Law [Cahill's St. ch. 32, ¶ 254 *et seq.*], for the reason that the defendants failed to file certain documents in the office of the secretary of state, as required by the provisions of that act. Substantially all of the evidence offered by plaintiff was,

upon objection, excluded, and at the close of plaintiff's case there was a directed verdict in favor of the defendants.

The evidence offered by plaintiff tended to show that during the winter of 1920 he became acquainted with the defendant Meyer, at the latter's restaurant which was located across the street from plaintiff's office; that Meyer induced him to buy some stock in an oil company in Texas that was thereafter to be organized; that on May 11, 1920, plaintiff purchased 60 shares of stock in the proposed company, paying the defendant, Meyer, $300 and afterwards on September 30, 1920, he purchased 40 more shares, paying $300 therefor; that when plaintiff made these two payments, he was given what is designated as a trustee certificate for 60 shares of stock in the proposed corporation to be known as the Earltex Oil Company, which certificate further stated that the capital stock of the corporation was to be $200,000, the par value of the shares to be $5. It certified that plaintiff had subscribed for the sixty shares of stock of the oil company "a corporation proposed to be formed under the laws of the State of Illinois," and that the plaintiff "upon the completion of such corporation" would be entitled, upon surrender of the certificate, to 60 shares of the capital stock of the corporation.

It further appears that plaintiff had another conversation with the defendant, Meyer, in reference to the oil business, in the summer of 1920, and that plaintiff probably saw Meyer once or twice afterwards during that year; that on April 5, 1921, plaintiff attended a meeting, at which there were about 50 to 75 people present, including all the defendants, and that Meyer took charge of the meeting and made a report as to what had been done in connection with the oil company; that the report was to the effect that they had spent all the money in drilling, but had struck no oil, and he asked all those present to go into another prop-

Wood v. Meyer et al., 240 Ill. App. 100.

osition to drill in fields where it was known that oil
would be found; that he requested all those present to
buy stock in the new company which he wanted to
organize; that all of the defendants took part in the
meeting and requested everybody to take stock in the
new concern; that at that time plaintiff told Meyer
he would take $200 worth. It further appears that
the meeting was then adjourned until April 9; that
plaintiff attended the meeting on that date, but there
were not quite so many people present, but all of the
defendants were there. The defendant, Meyer, again
took charge of the meeting and read the names of the
trustees who were to take charge of the new company.
This was the first information plaintiff had that there
were to be trustees. The defendants' names were all
mentioned as those who were to be trustees. Meyer
there stated that the organization plan was new and
as soon as applications and certificates were printed,
they would be furnished to those who promised to
take stock; that a number of the other defendants
talked at that meeting, advocating that investment be
made in the proposed concern; that at that meeting,
plaintiff gave the defendant, Austin, his check for $100,
in accordance with his agreement made at the previous
meeting—the check was made out to Austin, trustee;
that plaintiff, a few days later, attended another
meeting in response to an announcement; that at that
meeting some of the defendants presented printed ap-
plications and certificates and passed them around for
the purpose of securing the signatures of those who
had promised to take the stock; that plaintiff, pursu-
ant to solicitations by the defendants, paid them by
his checks, during the year 1921, the following: May
24, $200; August 10, $800 and September 17, $1,000,
making a total of $2,000 which he sought to recover.
The offered evidence further tended to show that
when the plaintiff agreed to make the several invest-
ments, there was presented to him and he signed at the

request of the defendant, Austin, the following document:

(Picture of an Oil Well)
"Earltex Petroleum Co.,

"No. 523         Proposed         $200.00

"Dated at Chicago, Illinois, April 20, 1921.

"Whereas, August A. Meyer, John P. Orvis, Allan J. Coleman, Eugene A. Lyon, Justin K. Orvis, Louis Vehon and James A. Billings, have been named as Trustees and have accepted the trust herein;

"Therefore, contributions are made to, and authority is given said trustees to acquire and dispose of, in their names as trustees, or otherwise, property and leases and drill thereon for oil, and acquire equipment, prospect, develop and exploit the same, and later as attorneys in fact, for all beneficiaries, organize a limited partnership with themselves as general partners and all beneficiaries as limited partners, under the name of Earltex Petroleum Co., and convey thereto all property held in trust, and deliver to the beneficiaries receipts in proportion to the several contributions. The trustees shall accept from time to time contributions to the total of $100,000.00, exclusive of the contributions of August A. Meyer, Trustee of the Earltex Oil Co., and may accept additional contributions so the total does not exceed $200,000.00, by first giving fifteen days' notice in writing to each beneficiary at their addresses furnished the trustees, to contribute such amount thereof, as they may desire, reserving the right in case of over contribution to pro rate same.

"The trustees may expend necessary funds for the purposes hereof and shall function in all things including the acquirement and conveyance of personal and real property by all or any number of trustees, less than the whole, and shall make such rules for the

conduct of the said business as they may deem advisable.

"Contribution is made as follows:

| "E. N. Wood (Seal) | 1156 Monadnock Blk. | $200.00 |
| Name | Address | Amount |

"Accepted:    August A. Meyer,
John P. Austin,
Allan J. Coleman,
Eugene A. Lyon,
Justin K. Orvis,
Louis Vehon and
James A. Billings,
                    Trustees,

by ...............
                    Trustee.

417 So. Dearborn St., Chicago, Illinois."·

(Reverse side)

"County of ............. } ss.
State of ................. }

"I, .............., a notary public in and for said county and state, do hereby certify that.........., personally known to me to be the same person who subscribed to the instrument on the reverse hereof, appeared before me this day in person, and acknowledged that ........ he signed, sealed and delivered the said instrument as h... free and voluntary act for the uses and purposes therein set forth.

"Given under my hand and notarial seal this ...... day of ........, A. D. 1921.

.........................
                    Notary Public."

The evidence offered by the plaintiff further tended to show that shortly thereafter he was given the following certificate:

(Picture of an Oil Well)

"No. 523                                              $200.00

"Earltex Petroleum Co.
Proposed.

"$200,000.00                                    $200,000.00

"Benefits as Per Amounts Contributed.

"This certifies, That E. N. Wood has contributed the sum of $200.00 in cash, *in property*, to Trustees in pursuance of and in accordance with the provisions, terms and conditions of an original trust agreement dated April 20, 1921, made with and by the Trustees named below, signed by this contributor and filed with John P. Austin, Trustee, 417 South Dearborn Street, Chicago, Illinois, which is made apart hereof, wherein the undersigned trustees propose to form a company to be called the Earltex Petroleum Co. and convey thereto all leaseholds, oil and other properties and interests, held and acquired by them as such and in which the contributor herein is entitled to benefits and profits in equal proportion to the amount contributed.

"Issued this 24th day of May, 1921.

August A. Meyer,
John P. Austin,
Allan J. Coleman,
Eugene A. Lyon,
Justin K. Orvis,
Louis Vehon and
James A. Billings,
Trustees,
by John P. Austin,
Trustee."

(Reverse side):

"Certificate of Contribution to Trustees.
Amount Contributed
For Proposed
Earltex Petroleum Co.
Issued to
E. N. Wood
Dated May 24, 1921.

"For and in Consideration of good and valuable consideration paid to the undersigned, I do hereby sell and assign all my right and title in and to the within Certificate, and in and to the agreement therein referred to, and the benefits of every kind to me represented thereby.

"Dated this ......... day of ........ 192...

...................
Contributor.

"In presence of:
...................."

The offered evidence further tended to show that when plaintiff agreed to subscribe for the $800 and $1,000 of stock he signed similar documents and received a certificate similar to those just quoted. The evidence further shows that the defendant, Meyer, had been coming to plaintiff's office very frequently and spending considerable time there. It was admitted on the trial that the requirements of the Illinois Securities Act (Blue Sky Law) had not been complied with and a certificate of the secretary of state to that effect was offered in evidence. Plaintiff also offered to show that after he paid the $1,000 above mentioned, there was a meeting of the trustees at which the defendant, Orvis, announced that the defendant, Meyer, had taken title to the real estate upon which the company had a lease, which lease Meyer gave to the company, charging more than he had paid for the property; that at a meeting of the trustees the

defendant, Orvis, stated that the revenue stamps on the deeds, by which Meyer got title to the real estate, indicated a consideration of $4,500 and that the lease on the real estate to the company showed a consideration of $20,000; that at a meeting of the trustees held in December, 1921, a resolution was passed by them authorizing the giving of a 30 per cent commission for the sale of shares. Other evidence was offered to show commissions had been paid to persons who had procured persons to invest in the concern. All of the evidence, upon objection by the defendants, was excluded. Thereupon the court directed a verdict in favor of the defendants.

The defendants contend that the exhibits which we have quoted above were properly rejected because it appears that the certificate or receipt issued by the defendants to plaintiff was based on a trust agreement, which trust agreement was not offered in evidence, and therefore, the intention of the parties could not be determined in the absence of the trust agreement, the receipt or certificate being incomplete without the trust agreement. We think this is not borne out by the record, for it appears that the certificate or receipt given by the defendants to plaintiff as well as a trust agreement were offered in evidence. The receipt certifies that plaintiff has contributed a certain sum in cash to the trustees ''in pursuance of and in accordance with the provisions, terms and conditions of an original trust agreement dated April 20, 1921, made with and by the Trustees named below, signed by this contributor and filed with John P. Austin, Trustee, 417 South Dearborn Street, Chicago, Illinois, which is made a part hereof.'' The companion document offered in evidence by the plaintiff, and which he was required to sign, is dated April 20, 1921, and bears the same number as the certificate ''523.'' The certificate states that this document is signed by the contributor, namely, the plaintiff, and plaintiff testified that he did sign the document

and that it was given to the defendant, Austin, whose address is No. 417 South Dearborn Street. That address appears upon both documents. The certificate further states that the document signed by Woods "is made a part hereof." A reading of the two documents renders it clear that the trust agreement mentioned in the certificate is the document which Wood swears he signed and offered in evidence.

The trust agreement provides that contributions are to be made to the trustees and they are given authority to make leases and to drill for oil and do all acts as attorneys in fact for the beneficiaries. The trustees are also authorized to "organize a limited partnership with themselves as general partners and all beneficiaries as limited partners, under the name of Earltex Petroleum Co." From this it appears that the defendants were authorized by the subscribers or beneficiaries not to form a corporation as the defendants contend, but "to organize a limited partnership with themselves (defendants) as general partners and all beneficiaries as limited partners" for the procuring of necessary property and equipment and the drilling for oil.

Section 2 of the Blue Sky Law, ch. 32, ¶ 255, Cahill's 1925 Statutes, defines the word "securities" to include "stock, treasury stock, bonds, debentures, investment contracts, notes, evidences of indebtedness, participation certificates, certificates of shares or interest, preorganization certificates and preorganization subscriptions, certificate evidencing shares of or interest in trust estates or associations, profit sharing agreements or certificates; * * * the capital or any property or assets of the issuer thereof, and any oil, gas or mining lease, and interests," etc. Paragraph 2 [Cahill's St. ch. 32, ¶ 255, subd. 2] of that section provides: "The word 'issuer' shall include every person and every company, trust, partnership or association incorporated or unincorporated heretofore or here-

after formed which proposes to issue, which shall have issued or which shall hereafter issue any security." By paragraph 4 [Cahill's St. ch. 32, ¶ 255, subd. 4] of the same section, it is provided: "The term 'sale' * * * shall include every disposition, or attempt to dispose, of a security or interest in a security for value. * * * The term 'sell' means any act by which a sale is made and the term 'sale' * * * shall include a subscription, an option of sale, a solicitation of sale," etc. Paragraph 5 [Cahill's St. ch. 32, ¶ 255, subd. 5] defines the terms dealer or broker to be "every person and every company, firm, trust, partnership or association, incorporated or unincorporated." Paragraph 4 of section 3 [Cahill's St. ch. 32, ¶ 256, subd. 4] of that act provides: "Securities based on prospective income, which shall be known as securities in Class 'D.' " Upon a consideration of the evidence offered, we think it clear that the securities in question came within the definition of Class "D" securities, because it is certain that whatever income might be derived from them was entirely speculative or prospective. But the defendants contend that the certificates or receipts given to plaintiff are Class "A" securities within the meaning of paragraph 11 of section 4 of the Illinois Securities Act [Cahill's St. ch. 32, ¶ 257, subd. 11] and are not Class "D" securities. Paragraph 11, is as follows: "Being subscriptions for or sales of shares of the capital stock of a corporation prior to the incorporation thereof under the laws of the State of Illinois, when no expense is incurred, or no commission, compensation or remuneration is paid or given for or in connection with the sale or disposition of such securities." In support of their contention they say that the certificates or receipts offered in evidence were subscriptions for shares of the capital stock of a proposed corporation which was to be known as the Earltex Petroleum Company, and that as a matter of fact, such company was incorporated in

Illinois June 7, 1922, and although there is no proof of this fact in the record they say that this court will take judicial notice of an Illinois corporation. We think we cannot take such judicial notice. Moreover, it is plain that the subscriptions did not come within paragraph 11 above quoted, because the trust agreement signed by plaintiff expressly authorized the defendants to organize not a corporation but "a limited partnership with themselves as general partners and all the beneficiaries as limited partners, under the name of Earltex Petroleum Co." And if the defendants, as a matter of fact, did afterwards incorporate under the laws of the State of Illinois, it was not in accordance with the terms of the authority given them, but contrary thereto. But the defendants further contend that if it should be held that the certificates or receipts offered in evidence did not fall within the provisions of paragraph 11, then the moneys contributed by the plaintiff became partnership funds and are governed by the laws pertaining to partnerships and that plaintiff therefore became a member of a partnership and under the law cannot maintain a suit against his partners. We think this argument is unsound, because the law pertaining to partnership in general is inapplicable under the facts in this case, because the Illinois Securities Act in section 2, *supra,* expressly provides that the "issuer" of securities as mentioned in the act, shall include partnerships. Moreover, paragraph 11 of section 4, above quoted, is further inapplicable, because by that paragraph subscriptions for shares of capital stock of a corporation to be thereafter formed, come within the act provided no commission or compensation is paid in connection with the disposition of the shares of the proposed corporation. The offered evidence tended to show that in the instant case commissions were paid.

It being conceded that the defendants did not comply with the provisions of the Illinois Securities Act

by filing certain documents in the office of the secretary of state, authorizing them to dispose of the securities in question, plaintiff by tendering back the securities, was by virtue of the provisions of section 37 [Cahill's St. ch. 32, ¶ 290] of that act entitled to recover the money he had paid. That section provides that every sale made in violation of the provision of the act shall be void at the election of the purchaser, and the seller of the securities and the officers and directors thereof and every solicitor, agent and broker for such seller, who did any act or in any way furthered such sale, shall be jointly and severally liable in an action at law or in equity upon tender to the seller or in court of the securities sold to the purchaser for the amount paid. We think the court erred in rejecting the offered evidence and that plaintiff made out a prima facie case.

It, therefore, follows that the judgment of the superior court of Cook county is reversed and the cause is remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

THOMSON, P. J., and TAYLOR, J., concur.