## Rudolph-Christy Casket Company for use of John L. Janisch, Appellee, v. John Tancl, Appellant.

## Gen. No. 31,377.

1. APPEAL AND ERROR—*when inclusion of referee's report, etc., in bill of exceptions unnecessary.* Appeal from a judgment based wholly upon the report of a referee and exceptions thereto and rulings thereon and the pleadings brings up for review the report, etc., without any necessity of setting them out bodily in the bill of exceptions, even though all the assignments of error are based upon the report, etc.

2. CORPORATIONS—*right to set off amount paid on canceled subscription against claim of corporation.* Where the president of a company agrees to cancel a stock subscription and credit the subscriber on his purchases from the company with the amount of his subscription, and this agreement is acquiesced in by stockholders and directors and acted on by the company, the subscriber is entitled to the credit as a set-off in an action by the assignee of the company for goods sold and delivered.

3. CORPORATIONS—*enforceability of subscription where Blue Sky Law not complied with.* Under Cahill's St. ch. 32, ¶¶ 287, 289 and 290, a subscription to stock of a company which has not complied with the provisions of the Illinois Securities Law and is practically insolvent at the time of the subscription, is void and unenforceable against the subscriber and he is entitled to the amount paid therefor as a set-off to the claim of the company for goods sold him.

Appeal by defendant from the Municipal Court of Chicago; the Hon. J. B. LANE, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Reversed with finding of facts and judgment here for $122.51. Opinion filed May 17, 1927.

CHARLES VLACH, for appellant.

EKERN & MEYERS, for appellee; LUTHER F. BINKLEY, of counsel.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On July 10, 1924, an action in assumpsit was commenced in the municipal court against the defendant,

Tancl, to recover a balance claimed to be due for certain merchandise sold and delivered. After defendant had filed an affidavit of merits, in which he denied any indebtedness to the Casket Company, or to its assignee, Janisch, the cause was, on October 20, 1924, and upon plaintiff's motion, referred to William H. Dellenback, as referee, "to take and state the account of the parties and return the same, with the objections, if any, to the court, pursuant to Section 68 of the Practice Act." Considerable evidence, oral and documentary, was introduced before the referee, and his report, together with defendant's objections and the transcript of the testimony and exhibits, was filed on February 17, 1926. By stipulation the *original* report, etc., are contained in the present record. Prior to their filing defendant by leave of court filed a claim of set-off. The referee found that there was a net balance owing from defendant of $1,222.51. There was a trial before the court without a jury upon the report and certain of defendant's objections (treated as exceptions), resulting in the court's allowing to defendant an additional credit of $100, and, on March 29, 1926, entering judgment against him for $1,122.51, and costs including $120.65 advanced by plaintiff for referee's and stenographer's fees. Defendant appealed.

After the transcript of the record had here been filed, plaintiff moved that certain parts be stricken and that the judgment be affirmed. Written suggestions in support of the motion as well as counter suggestions were filed, and the motion was reserved to the hearing. Plaintiff's contention, as we understand it, is that, inasmuch as the referee's report, etc., are not bodily contained in the bill of exceptions, and as all of defendant's assignments of error are based thereon, there is nothing for this court to consider and the judgment should be affirmed. We cannot agree with the contention and plaintiff's motion is denied. Both in the draft judgment order and in the bill of exceptions,

the report, etc., are referred to as being the sole basis of the finding and judgment. In the former it is recited that, the cause coming on to be heard upon the report of the referee and the exceptions of the defendant thereto, and the parties having waived a trial by jury and having submitted the same to the court "for decision upon the report of the referee and the exceptions of the defendant thereto," and the court "having considered said report and the exceptions thereto," it is ordered, etc. In the bill of exceptions it is recited that the cause came on for hearing upon the pleadings filed herein "and upon the report of the referee filed herein," and that "upon the exceptions, or objections, of defendant to the report of the referee," the court finds, etc. We think that the referee's report, etc., under the statute, were parts of the record, forming with the pleadings the issues which were tried by the court, and that the report, etc., and the court's finding and judgment based thereon, are properly before us for review.

In defendant's statement of set-off it is alleged in substance that in July, 1921, he made an oral agreement with the Casket Company to purchase 20 shares of its capital stock at $50 per share; that pursuant to this agreement he executed and delivered his note to the Casket Company for $1,000, which he afterwards paid, and the Casket Company received the benefit of the proceeds of the note; that said stock never was issued to him nor was he ever given credit for said $1,000; that the Casket Company never considered him as a stockholder nor did he ever participate in its affairs as a stockholder; that his said agreement to purchase said stock was void and unenforceable, and thereafter was treated as such by the Casket Company, because, at the time he made such agreement to purchase the stock and delivered the note, (a) the Casket Company had failed to comply with the provisions of the Illinois Securities Law (Blue Sky Law), Cahill's

St. ch. 32, ¶ 254 *et seq.*, in that it had not procured a license or permit to sell the stock or offer it for sale, and (b) the Casket Company was at the time insolvent and known to be such by its officers; that in February, 1923, he loaned $100 to the Casket Company which never was returned to him and for which he never was given credit (this $100 is the additional credit allowed by the court over the credits allowed by the referee as above mentioned); and that there is due from the Casket Company, or its assignee, Janisch, the sum of $1,100.

The following facts in substance, sustained by the evidence, are disclosed from the findings of the referee: The Casket Company was an Illinois corporation, organized in 1920, for the purpose of manufacturing and dealing in undertakers' supplies. Defendant, Tancl, a Chicago undertaker, commenced purchasing merchandise from it prior to 1922, but the purchases here involved were made during the period from June, 1922, to March 3, 1924. Prior to December, 1922, W. H. Rudolph was the president and managing head of the Casket Company. He was succeeded in that office by one Christy and later by Fred Burkhard. The company was always in financial difficulties, and "was practically insolvent from the time of its organization up to the time of its dissolution, or at the time all of its assets, including the accounts, were sold to John Janisch," beneficial plaintiff, on April 3, 1924. Plaintiff claimed that there was due from defendant for merchandise purchased during the period above mentioned the net sum of $1,441.76, but the credits it allowed to defendant did not include certain discounts to which he was entitled. Giving credit for these discounts plaintiff claimed on the hearing the net sum of $1,222.51, for which sum the referee recommended that judgment be entered against defendant. In July, 1921, defendant made an oral agreement with an agent of the Casket Company to subscribe for 20 shares of its

capital stock at $50 per share, and gave to it his note
for $1,000, which it discounted and the proceeds were
used by it. Subsequently defendant paid the note, but
he never received a certificate for the 20 shares. Be-
ing present at a stockholders' meeting of the company
in February, 1923, he was nominated for one of the
directors, but, because of objection made that he was
not a stockholder, he was not elected as a director.

It appears from defendant's testimony, corroborated
by that of Rudolph, that, about a month after the
Casket Company had received the money on the $1,000
note, defendant and Rudolph (acting as president and
for the Casket Company) verbally agreed that de-
fendant's subscription for said 20 shares of stock be
canceled, but that the money should remain with the
company and defendant credited with the amount as
against future purchases of merchandise, and that this
agreement thereafter was acted upon by the company.
Although the referee found in his report that Rudolph,
as president, never received any express authority
from the directors of the Casket Company to cancel
defendant's subscription for said 20 shares of stock,·
or to make any agreement to credit defendant for the
$1,000 paid therefor, we think that the evidence suffi-
ciently discloses that said cancellation was made with
the knowledge and acquiescence of the stockholders
and directors and subsequently was acted upon by the
company. Furthermore, it clearly appears that de-
fendant's original agreement to subscribe for the stock
was void and unenforceable, because at the time it was
made, as shown by a certificate of the secretary of
State introduced in evidence, the Casket Company had
not complied with the provisions of the Illinois Se-
curities Law. (See sections 34, 36 and 37 of that law,
Cahill's St. 1925, ch. 32, ¶¶ 287, 289 and 290.) And we
think that the court erred in not allowing defendant an
additional credit of $1,000 as against said balance of

$1,122.51. Allowing this credit, there is a net balance remaining of $122.51.

Defendant also claims that he should have been allowed on the account further credits of $64 (payment made in December, 1923) and $128.52 (payment made in January, 1924), but we think that it sufficiently appears from the testimony of the bookkeeper of the Casket Company, supplemented by documentary evidence, that defendant was credited with these payments by the Casket Company and by the referee in his statement of account.

Our conclusion is that the judgment appealed from should be reversed and judgment entered here in favor of plaintiff and against defendant in the sum of $122.51. Inasmuch as it appears that in the trial court each party paid his own costs and each paid one-half of the referee's and stenographer's charges, we think it proper that neither party recover from the other any costs expended in the trial court, but as to the costs expended by the defendant (appellant) in this Appellate Court, the same shall be taxed against the plaintiff (appellee).

*Reversed with finding of facts and judgment here for $122.51.*

FITCH and BARNES, JJ., concur.

Finding of facts. We find as facts in this case that defendant, Tancl, in compliance with an oral agreement with the Casket Company to subscribe for 20 shares of its capital stock, paid to it $1,000 for said stock; that he never received said stock and never participated in the affairs of the Casket Company as a stockholder; that by his subsequent oral agreement with the Casket Company his said subscription was canceled and said $1,000 was retained by the Casket Company to be credited to him on merchandise to be subsequently purchased of it; that thereafter he purchased merchandise of the Casket Company, but was

never given credit by it, or by its assignee, Janisch, for said $1,000 or any part thereof; and that he (Tancl) is indebted to plaintiff only in the sum of $122.51.