CAROLINA PALISADES, INC. *v.* MANLY.
[No. 27,073. Filed October 17, 1938.]

*Isaac Carter*, and *Robert M. Kinney*, for appellant.

*Barnés & Johnson, Charles M. Wells*, and *Christian & Waltz*, for appellee.

TREMAIN, J.—This was an action by appellant against appellee to recover upon a stock subscription in a corporation to be organized under the laws of the State of North Carolina, wherein it is alleged that appellee was one of the organizers of the corporation, and subscribed

and agreed to take and pay for 100 shares of the stock at the par value of $10 each; that he wholly failed and refused to pay for said stock. There was a demand for judgment in the sum of $1,000.

The appellee filed an affirmative answer in which he alleged that one Dye of Noblesville, Indiana, "and parties other than this defendant were the promoters of plaintiff corporation. The said Dye solicited defendant in the state of Indiana to subscribe to 100 shares of the capital stock of plaintiff;" that thereafter appellee signed and delivered in the State of Illinois the certificate embodying the subscription agreement sued upon by appellant; that said subscription agreement was made in violation of both the Indiana and Illinois securities acts in this, to wit: That appellant never complied in any respect with either of said laws; that the subscription agreement has never been registered or qualified thereunder.

The answer contains a copy in full of the Illinois Securities statute, which is quite lengthy. Reference to certain sections will be made hereafter.

It is alleged in the answer that the subscription agreement was a security defined by the Illinois Securities Law and came within the purview of Class D, as defined in the act; that none of the stock for which the appellee is alleged to have subscribed was ever delivered to him; that because of appellant's failure to comply with either the Indiana or Illinois Securities Law, the subscription agreement is voidable, and has been disaffirmed by appellee.

To this answer the appellant addressed a demurrer for want of facts. The purport of the memorandum filed with the demurrer is that the subscription contract does not fall within either of said securities laws, commonly known as the Blue Sky Law.

The appellee contends, and the court held, that the

subscription agreement was subject to the Blue Sky Law of the State of Illinois, where the agreement was signed and delivered by appellee, after he had been solicited by appellant's promoter in the State of Indiana.

Appellant concedes that there was no attempt to comply with the Blue Sky Law of either state, contending that a subscriber to stock in a coropration, in the process of formation in another state, was not a purchaser within the purview of either of those laws; that there is no allegation in either the complaint or answer which indicates, in any degree, that appellee either bought or sold stock in appellant corporation; that he was merely one of the incorporators, and, being such incorporator, could not claim the advantage of the Blue Sky Law. It cites and relies upon *Wilder Nat. Tavern System* v. *Jillson* (1932), 256 Mich. 479, 240 N. W. 6, which was an action to recover a sum due on a stock subscription wherein the court said:

> "If defendant was interested in promoting the organization of the corporation and agreed to subscribe for shares of stock therein when it was organized, then there was no violation of the blue sky law of Illinois."

Appellant was an Illinois corporation.

It will be noted that the Michigan court held there would be no liability upon the subscription contract if the defendant was one of the promoters. This position may be conceded, but it can be of no controlling influence in the case at bar. The manner in which the question is presented must not be overlooked—that is, a complaint based upon a written stock subscription contract, to which an affirmative answer was filed, alleging that parties other than the appellee were the promoters; that appellee was solicited in the State of Indiana to subscribe for the stock; that afterwards a subscription contract was executed in the State of Illinois; and that

the subscription contract constituted a security falling within the purview of the Illinois Blue Sky Law.

The demurrer to this paragraph of answer admits the truth of all allegations well pleaded. It cannot be contended successfully by appellant that appellee was one of the promoters, when the answer specifically says that he was not a promoter. For that reason the Wilder Case is not applicable. The demurrer to the answer was overruled upon the ground that either the Indiana or Illinois Blue Sky Law, or both, applied to the subscription agreement sued on. Appellant elected to stand upon that ruling and appealed to the Appellate Court.

In a suit of this character it is well settled that the defense of noncompliance with a Blue Sky Law is a matter which shall be pleaded specially. In *United Bank & Trust Co.* v. *Joyner* (1932), 40 Ariz. 229, 11 Pac. (2d) 829, the court said that, since the contract therein sued on was made in violation of the provisions of the Blue Sky Law, it conferred no rights on the company and would not be enforced by the court, and the defendant was authorized to plead its illegality as a defense to an action by the company on his subscription.

There is no denial that the subscription agreement was executed in the State of Illinois, as alleged in the answer, but the contention further is that the Illinois Securities Law does not apply to a subscription to stock in a corporation not in existence at the time the subscription was made. Section 2 (1) of that act provides:

"The word 'securities' shall mean and include stock, . . . preorganization certificates and preorganization subscriptions . . ."

Section 2 (4) provides:

"The terms 'sale,' 'offer for sale,' or 'sell' shall include every disposition, or attempt to dispose, of

a security or interest in a security for value. . . . the term 'sale' or 'offer for sale,' shall include a subscription, an option of sale, a solicitation of sale, an attempt to sell . . ."

Section 37 (1) provides:

"Every sale and contract of sale made in violation of any of the provisions of this Act shall be void at the election of the purchaser . . ."

The terms of a Blue Sky Law, in respect to subscriptions, must be complied with in order to make the agreement binding and enforceable. This statute was before the Illinois court in *Rudolph-Christy Casket Co.* v. *Tancl* (1927), 244 Ill. App. 314. The question arose in that case in an action against the defendant for goods sold, and the defendant filed a set-off in which he alleged that the plaintiff was indebted to him upon a subscription to stock in the plaintiff's company, which had failed to comply with the Blue Sky Law of Illinois. That court said (p. 318):

". . . it clearly appears that defendant's original agreement to subscribe for the stock was void and unenforceable, because at the time it was made . . . the Casket Company had not complied with the provisions of the Illinois Securities Law."

To this same effect is *Wood* v. *Meyer* (1926), 240 Ill. App. 100, wherein it is shown that the plaintiff subscribed for certain shares of stock in a corporation before it was incorporated, and who, after subscribing for the stock and paying for the same, filed an action to recover the amount paid on the ground that the stock was sold in violation of the Illinois Securities Law. The court said (p. 111):

"It being conceded that the defendants did not comply with the provisions of the Illinois Securities Act by filing certain documents in the office of the secretary of state, authorizing them to dispose of the securities in question, plaintiff . . . was by virtue of the provisions of section 37 (Cahill's St. ch.

32, Sec. 290) of that act entitled to recover the money he had paid."

14 Fletcher Cyclopedia Corporations (Perm. Ed.) Sec. 6747, pp. 151, 152; *Rhines* v. *Skinner Packing Co.* (1922), 108 Neb. 105, 187 N. W. 874.

Under the allegations of the answer the subscription contract was executed in the State of Illinois for the sale and purchase of stock in a corporation to be organized in the State of North Carolina. Without doubt the transaction was controlled by the Illinois statute which specifically applies to such sale.

Innumerable cases could be cited upon the question here presented based upon the Blue Sky Laws of the several states. There is not entire harmony among the many decisions. Likewise, the statutes of the several states vary in many respects. For an exhaustive review of the subject see the annotation in 87 A. L. R. 42, and pages 104 and 105.

There was no error in overruling the demurrer to the answer. The judgment of the lower court is affirmed.